256 So.2d 209 (1971)
Norris E. WORDEN, Petitioner,
v.
PRATT AND WHITNEY AIRCRAFT et al., Respondents.
No. 40921, Industrial Relations Commission Claim No. GG-38927.
Supreme Court of Florida.
December 1, 1971.
Rehearing Denied January 24, 1972.
J.J. Goodmark, of Goodmark & Goodmark, West Palm Beach, for petitioner.
Paul C. Wolfe, of Jones, Paine & Foster, West Palm Beach, J. Franklin Garner and Kenneth H. Hart, Jr., Tallahassee, for respondents.
ADKINS, Justice.
By petition for writ of certiorari, we have for review an order of the Industrial Relations Commission dated February 19, 1971, affirming an order of the Judge of Industrial Claims.
Petitioner-claimant, a 58-year-old male, was employed by respondent Pratt and Whitney Aircraft as a heat treater. In his employment claimant was required to look into electric furnaces which generated temperatures of 2400-2700 degrees to determine the proper color of materials being treated in the furnaces. Claimant had been employed by respondent since 1960.
This claim was made because of cataracts which developed in the claimant's eyes. The first cataract developed sometime before January 9, 1967, in claimant's *210 left eye, and the second cataract developed sometime after that date and before the spring of 1969. Claimant was required to look into the furnaces every day and was approximately two feet away from them. They were small laboratory furnaces and the heat would not burn claimant's body. On a Saturday, claimant noticed that he could no longer use a microscope as a "filmy-kind of light web structure" obscured whatever he looked through in the miscroscope. He reported this to his supervisor.
On January 9, 1967, claimant consulted Dr. Robert D. Baum, an ophthalmologist, who noted a moderately severe cataract of the left eye. Dr. Baum had examined claimant in 1965 and found claimant's eyes essentially normal.
In July, 1968, Dr. Baum performed a cataract operation on the left eye. Claimant returned to his employment. A second cataract developed on the right eye and this was removed by Dr. Baum on June 30, 1969.
A claim was made because of the cataracts. There was no claim for temporary benefits or for medical care as each of these items had been appropriately provided in the past by the carrier. At the hearing, it was agreed that the carrier had also paid twenty per cent loss of vision of the claimant's left eye and five per cent loss of vision of his right eye. A claim was made for additional permanent disability, future medical care, attorneys' fees, transportation and costs.
It was the position of the employer and carrier that although they had paid compensation and provided medical care, the claimant was not injured by accident arising out of and in the course of his employment and did not have an occupational disease. In the alternative, employer and carrier alleged that they had paid all benefits to which the claimant was entitled.
At the hearing, Dr. Baum testified that within reasonable medical probability, both cataracts were caused by the infrared radiation to which claimant was exposed on his job with the respondent Pratt and Whitney Aircraft. In the doctor's opinion any cataract which would have developed from exposure to infrared radiation would have developed over a period of years from repeated exposure. Because of this, the Judge of Industrial Claims held that this was not an injury by accident arising out of and in the course of employment. The Judge also held that any cataract which claimant had was not peculiar to any particular occupation and, therefore, was not an occupational disease within the purview of the workmen's compensation law. The claim for additional compensation benefits and additional care was denied and, upon review by the Industrial Relations Commission, the order was affirmed.
The accidental nature of an injury is not altered by the fact that, instead of a single occurrence, the injury is the cumulated effect of a series of occurrences. As stated in Brito v. Advance Metal Products, Inc., 244 So.2d 428 (Fla. 1971):
"In Victor Wine & Liquor, Inc. v. Beasley, Fla. 1962, 141 So.2d 581, the Court in analyzing `exposure' cases, points out that the ill effects of the exposure need not occur suddenly and be immediately related to an identifiable incident. The Court further points out that in Czepial [v. Krohne Roofing Co., Fla., 93 So.2d 84], supra, the Court had held that
"`In the so-called "exposure" cases, this court has stressed that, to entitle the employee to compensation, he must have been subjected to more than the ordinary hazards confronting people generally; but we have found no case in which it has been held that the ill effects of the exposure must occur suddenly and be immediately related to an identifiable incident. On the contrary, it was held in the Czepial case, supra, 93 So.2d 84, that "the fundamentally accidental nature of the injury *211 is not altered by the fact that, instead of a single occurrence, it is the cumulative effect of the inhalation of dust and fumes to which a claimant is peculiarly susceptible that accelerates a claimant's pre-existing disability."'" (p. 429)
This concept of accident is demonstrated in the testimony of Dr. Baum:
"Q ... Do you feel that, since in 1968 you didn't see it when you first  he had his first cataract, you did find it in 1969; is this still consistent with the diagnosis of infrared cataract?
"A The appearance of the cataract is not necessarily of equal duration with the extent of the exposure. The exposure may have occurred over a period of time previously. There may be some critical trigger point after a period of months of exposure at which point the cataract begins to form." (Tr. 40)
In Davis v. Artley Construction Company, 154 Fla. 481, 18 So.2d 255 (1944), claimant suffered a cerebral hemorrhage when he became overheated while unloading a box car and was awarded compensation. Alexander Orr, Jr., Inc. v. Florida Industrial Commission, 129 Fla. 369, 176 So. 172 (1937), involved a claim for the death of a plumber caused by sunstroke after being subjected to intense heat and using a blow torch on a hot August day. Benefits were allowed. In Meehan v. Crowder, 158 Fla. 361, 28 So.2d 435 (1946), nephritis caused by poisonous fumes of solution of mercury bichloride penetrating the body and bloodstream of the claimant while washing a building with such solution was held compensable as caused by an "accident."
The case of Grimes v. Anchor Hocking Glass Corporation (claim No. XXX-XX-XXXX; not reported) decided by the Judge of Industrial Claims on May 22, 1970, and affirmed by the Industrial Relations Commission on December 23, 1970, involved a claim for cataract suffered by accident. Claimant operated an automatic glass machine which formed glassware from molten glass. He was exposed to molten glass at regular five-second intervals and the heat of the molten glass was approximately 2000 degrees Fahrenheit. At times he would be as close as one foot to the molten glass. Claimant's vision became poor and an ophthalmologist found a cataract in each eye. The Judge found that the cataracts were the result of his exposure to radiation and heat from molten glass in the course of his employment and that this exposure and risk was different and greater than that to which the general public is exposed. The Judge also found that the cataracts resulted from repeated accidents sustained by the claimant arising out of and in the course of his employment which culminated in the formation of the cataracts as a result of exposure to infrared radiation and heat. The Judge found that this was an injury by accident. This reasoning is applicable to the case sub judice and we hold that the cataracts of this claimant developed as the result of repeated accidents arising out of and in the course of his employment with Pratt and Whitney Aircraft.
In Ingalls Shipbuilding Corporation v. King, 229 Miss. 871, 92 So.2d 196 (1957), the Supreme Court of Mississippi held that claimant was entitled to workmen's compensation benefits for cataracts which were caused and aggravated by the absorption of radiant energy. The Court pointed out in its opinion that infrared rays, such as given off by a burning torch, may cause cataracts to form and, if one has incipient cataracts, the absorption of radiant energy and infrared rays is calculated to aggravate the cataracts and accelerate the loss of eyesight.
See also Kucinic v. United Engineering & Foundry Co., 110 Pa.Super. 261, 168 A. 344 (1933); Larson's Workmen's Compensation Law, Vol. 1A, (1967), § 39.10.
*212 The Judge of Industrial Claims was in error in finding that claimant had no disability since his vision is correctable and has been corrected by the use of eye glasses. In Burdine's, Inc. v. Green, 150 Fla. 361, 7 So.2d 460 (1942), this Court held that compensation for injury resulting in partial loss of vision could not be reduced by improving vision by the use of eye glasses.
The order of the Industrial Relations Commission is reversed with directions that the cause be remanded to the Judge of Industrial Claims for the entry of an order consistent with the views expressed herein.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON and McCAIN, JJ., concur.