597 So.2d 348 (1992)
TOKYO HOUSE, INC. and Associated Industries of Florida, Appellants,
v.
HSIN CHU and American Policyholders Insurance Company, Appellees.
No. 90-3063.
District Court of Appeal of Florida, First District.
April 13, 1992.
*349 Valerie A. Marshall and J. Larry Hanks of Jeffery, Thomas & Marshall, Maitland, for appellants.
Larry E. Powers, Jr., Orlando, for appellees.

ON MOTION FOR REHEARING AND CLARIFICATION
PER CURIAM.
In response to appellants' motion for clarification, we withdraw our previous opinion and substitute the following opinion. In light of the substituted opinion, appellants' motion for rehearing is denied.
Tokyo House, Inc., and Associated Industries of Florida appeal two workers' compensation orders in this repetitive trauma injury case. The first order found the claim to have been filed within the two-year statute of limitations. The second order dismissed the employer's former insurance carrier from the case. For the reasons hereafter explained, we affirm both of the appealed orders.
Hsin Chu, the claimant in this case, is an employee of Tokyo House, Inc., which operates a restaurant. Since April 24, 1989, Associated Industries of Florida (Associated) has provided workers' compensation insurance coverage for Tokyo House. American Policyholders Insurance Company (American Policyholders) provided workers' compensation insurance for Tokyo House for many years prior to Associated; its coverage terminated April 15, 1989.
On June 9, 1989, Hsin Chu filed a notice of injury with Associated alleging that he recently sustained a work-related injury to his right foot. Also on June 9, 1989, Hsin Chu filed a claim for benefits with Associated alleging injuries to both elbows, shoulders, and hands, and alleging that these injuries resulted from repetitive trauma during his 14 years as a cook at Tokyo House.[1] Associated controverted the latter claim for benefits.
On March 20, 1990, a hearing was held wherein it was established that Associated had become the carrier for Tokyo House on April 24, 1989, and had assumed liability for the injury to Hsin Chu's right foot. At that hearing, Hsin Chu's counsel conceded that Hsin Chu was symptomatic as to the *350 repetitive trauma injuries prior to April 24, 1989, but stated that Associated was the appropriate carrier to assume liability under a repetitive trauma theory because the last injurious trauma occurred after April 24, 1989. The judge suggested that it might be appropriate for American Policyholders to be brought into the case since it provided workers' compensation insurance coverage for Tokyo House prior to Associated, and offered to continue the hearing until a later date for that purpose; both Hsin Chu and Associated agreed to the continuance.
On August 22, 1990, a hearing was held at which Hsin Chu, Associated, and American Policyholders were represented. The attorney for American Policyholders acknowledged receiving a notice of hearing, but stated that neither Hsin Chu nor Associated had filed a claim against American Policyholders. The judge offered to continue the case again so Hsin Chu could file a claim against American Policyholders, but Hsin Chu's attorney decided against that course of action. The judge then stated that American Policyholders was officially dismissed from the case. Associated did not object to the dismissal nor request a continuance on its behalf for the purpose of filing a claim against American Policyholders.
On September 24, 1990, the judge issued the two appealed orders. One of the orders reflected the dismissal of American Policyholders from the case. In the other order, the judge found that Hsin Chu's claim was filed within the two-year statute of limitations. He also ordered Associated to pay all of the treating physician's bills retroactive to June 9, 1989, and continuing.
Associated and Tokyo House first argue on the appeal that the order dismissing American Policyholders from the case must be reversed because American Policyholders made an appearance, waived jurisdictional objections, and provided workers' compensation coverage at all times material to the claim. We reject this argument. The record shows that neither Hsin Chu nor Associated ever filed any type of claim against American Policyholders, thus it was never a party to the action. Associated argues that American Policyholders's acts of filing a pretrial stipulation and appearing at the hearing after receiving notice constituted a waiver of jurisdictional objections. That argument misses the point: American Policyholders was never named a party in any pleading, and filing the pretrial stipulation and appearing at the hearing did not make it one. For this reason, we affirm the order of dismissal.
Associated and Tokyo House next argue that the judge assigned the wrong date of accident to the claim and thereby unfairly prohibited their otherwise effective statute of limitations defense. Associated and Tokyo House argue that Food Machinery v. Shook, 425 So.2d 163 (Fla. 1st DCA 1983), stands for the proposition that the date of accident from repetitive trauma is the date the claimant becomes disabled to the extent that he seeks medical attention for the injury. We do not read Food Machinery so narrowly. In that case, the claimant suffered hearing loss from long-term noise exposure. The deputy commissioner found June 1, 1979, to be the date of accident "because it was June 1, 1979 before the claimant reached a point where his hearing loss had become disabling and he was required to seek medical attention." 425 So.2d at 165. This court affirmed because, "[r]eversible error has not been shown on this point." 425 So.2d at 165. The court did not state that the date of accident could only be the date when the claimant became disabled to the point that he had to seek medical attention. It merely stated that the appellant in that case had shown no reason to reverse the date of accident as found by the deputy.
Food Machinery involved a "prolonged exposure" to "excessive noise trauma," which the court analyzed as an exposure case.[2] But the court referred to American *351 Beryllium Co. v. Stringer, 392 So.2d 1294 (Fla. 1980), which was an occupational disease case where the disability constituted the accident upon which the limitations period commenced. Stating that "no reason has been suggested why the same rule should not apply in exposure cases," the Food Machinery court recognized that the limitations ruling that it addressed was in accord with American Beryllium. To the extent that the claimant's disability and the need for medical care in Food Machinery did not occur until after the last injurious exposure, this approach is consistent with the general proposition that the limitations period does not commence until a reasonable claimant would recognize the probable compensable character of the injury. See e.g., Herb's Exxon v. Whatmough, 487 So.2d 1169 (Fla. 1st DCA 1986).
The reference to occupational disease theory in exposure or repeated trauma cases may have engendered some confusion. Although the doctrines occasionally overlap and exposure or repeated trauma injuries may sometimes also be occupational diseases, the concepts are not identical. The exposure theory evolved from cases such as Orr v. Florida Industrial Commission, 176 So. 172 (Fla. 1937), in which the supreme court determined that an "accident" resulted from a claimant's exposure to intense heat. Subsequent cases involving exposure or repeated trauma claims addressed the statutory requirement that an accident happen "suddenly." See e.g., Meehan v. Crowder, 28 So.2d 435 (Fla. 1946); S.H. Kress & Co. v. Burkes, 153 Fla. 868, 16 So.2d 106 (1944). Meanwhile, the legislature amended chapter 440 to provide for occupational disease claims. See § 440.151, Fla. Stat. (1945). This new provision created several distinctions between occupational diseases and injuries from traditional accidents. Among other differences, an occupational disease must be related to a particular trade, occupation, etc. See § 440.151(2). And in occupational disease cases the resulting "disablement or death" is treated as an "injury by accident." See § 440.151(1)(a). The court proceeded to consider occupational disease claims in subsequent cases that emphasized the distinction between occupational diseases and other claims. See e.g., Mundy v. McLean, 72 So.2d 275 (Fla. 1954).
The exposure theory continued to develop apart from occupational disease theory, and in Czepial v. Krohne Roofing Co., 93 So.2d 84 (Fla. 1957), it was indicated that an "accidental" injury may result from the cumulative effect of multiple exposures. The supreme court expounded on this theory in Worden v. Pratt and Whitney Aircraft, 256 So.2d 209 (Fla. 1971), explaining that the multiple exposures constitute "repeated accidents" which combine to produce the compensable injury.[3] In Keller Building Products v. Shirley, IRC Order 2-3263 (November 3, 1977), cert. denied, 362 So.2d 1054 (Fla. 1978), the Industrial Relations Commission extended this theory to cases of repeated trauma.
This court addressed the exposure and repeated trauma theory in Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA), rev. denied, 388 So.2d 1119 (Fla. 1980), adopting the reasoning of Keller Building Products and, after noting the "repeated accidents" rationale in Worden, determined that exposure and repeated trauma cases should be governed by the same principles. But the occupational disease doctrine continues to have a separate area of applicability, and an exposure or repeated trauma injury may be compensable even though it does not meet the test for an occupational disease. See e.g., Lake v. Irwin Yacht & *352 Marine Corp., 398 So.2d 902 (Fla. 1st DCA 1981).
The present case involves a repeated trauma claim with recurring injurious incidents while Associated was the carrier at risk during the two-year limitations period immediately before the claim was filed. The claim was thus properly found to have been filed within the time required by the statute of limitations. Because only medical benefits accruing after Associated assumed responsibility for the claim and prior to claimant's reaching maximum medical improvement were claimed and awarded, apportionment and merger principles do not apply in this case. Any further dispute as to the date of accident is therefore beyond the necessary scope of this appeal. We do not now approve or disapprove the date that the judge assigned, as determination of a precise date of injury may be addressed in the future if it becomes necessary for the resolution of a disputed claim.
Subject to the qualifications expressed herein, the appealed orders are affirmed.
ERVIN, ZEHMER and MINER, JJ., concur.
NOTES
[1] Hsin Chu's treating physician testified that these are joint injuries resulting from the repetitive activities performed by claimant in his duties as an oriental chef (e.g., cutting, chopping, stirring, lifting).
[2] In Festa v. Teleflex, Inc., 382 So.2d 122 (Fla. 1st DCA 1980), this court addressed both repeated trauma and exposure, stating that:

[F]or a claimant to recover under the exposure theory of accident, he must show 1) prolonged exposure, 2) the cumulative effect of which is injury or aggravation of a preexisting condition and 3) that he has been subjected to a hazard greater than that to which the general public is exposed. Alternatively, he must demonstrate a series of occurrences, the cumulative effect of which is injury. [citation omitted.] These same theories should be applied in cases involving injuries resulting from repeated trauma.
382 So.2d at 124.
[3] Support can also be found in other jurisdictions for the theory that, where repeated impacts or inhalations combine to produce injury and disability, each impact or inhalation should be treated as a separate accident leading to the injury and disability. See 1B Larson, The Law of Workmen's Compensation, § 39.00 et seq. (1991).